IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Leoris Payton, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:15-cv-742 |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Nationwide Debt Direct, | : | Order Granting Motion to Dismiss |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 9). Plaintiff Leoris Payton has filed this action against Defendant Nationwide Debt Direct ("Nationwide") alleging that Nationwide made false and misleading representations in its solicitations to her and other Ohio consumers regarding its debt settlement services. She specifically alleges that Nationwide tried to "scare" her into believing that she owed debts that, in fact, she did not owe and that she required its services to settle those debts. Nationwide has moved to dismiss the claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Motion to Dismiss will be **GRANTED**.

I. BACKGROUND

A. Facts Alleged

Payton's well-pleaded allegations of fact in the Class Action Complaint (Doc. 1) are taken as true for purposes of the Motion to Dismiss. Payton is an Ohio resident who owns real property in Lawrence County, Ohio. (*Id.* at PageID 1.) Nationwide is a "debt settlement and renegotiation provider" located in Frisco, Texas. (*Id.*)

Nationwide solicited Payton by mail and telephone regarding her eligibility for the company's debt settlement services. (*Id.* at PageID 2–3.) Payton alleges that she received

"multiple" letters and phone calls, but she did not allege the number or timing of the communications with specificity.  (*Id.*)  She attached one solicitation letter from Nationwide as an exhibit to the Class Action Complaint.  The envelope for the letter is marked "RE: CREDIT CARD SETTLEMENT," and the letter itself is headed "IMPORTANT: DEBT SETTLEMENT NOTICE: PLEASE READ ENTIRE DOCUMENT CAREFULLY."  (*Id.* at PageID 13–14.)  The solicitation letter indicates that Payton is a candidate for the debt settlement program because of her "[r]evolving consumer debt and credit card payments" and that it is "important" that she contact Nationwide.  (*Id.* at PageID 13.)  The letter states that Nationwide has successfully settled debts with a number of national creditors, and that Plaintiff "may qualify for a significant reduction of [her] consumer debt."  (*Id.*)  The letter also lists the following "POTENTIAL BENEFITS" of its debt settlement services:

> –Significant Debt Reduction
> –Bankruptcy Alternative
> –Become Free From Credit Card and Other Unsecured Debt
> –Low Program Payment
> –Save Thousands of Dollars in Interest
> –No Home or Collateral Required

(*Id.*)  Payton continued to receive debt settlement letters and phone calls from Nationwide after informing the company that she did not owe outstanding debt.  (*Id.* at PageID 3).  She concludes that these debt settlement letters and phone calls were misleading.

Payton alleges that other Ohio consumers have been subjected to similar practices by Nationwide in its attempts to solicit business for its debt settlement services.  (*Id.*)  She bases this allegation on listings of consumer complaints about Nationwide filed with the Better Business Bureau ("BBB") and the Ohio Attorney General ("OAG"). (Doc. 1-2 at PageID 15; Doc. 1-3 at PageID 16–17.)  However, it is not evident from the face of the BBB exhibit that the BBB complaints made against Nationwide were from Ohio consumers.  (Doc. 1-2 at PageID 15.)  As

2

for the OAG complaints, the "problem area[s]" noted in the summary listing of complaints include the general problems of "misrepresentation" and "unsolicited mail," but the specific bases of the complaints are not identified. (Doc. 1-3 at PageID 16–17.)

**B.      Procedural Posture**

Payton initiated this action by filing a Class Action Complaint against Nationwide on November 17, 2015 on behalf of herself and a putative class consisting of "all Ohio consumers who received misleading debt settlement letters from Defendant." (Doc. 1 at PageID 4.) She asserts three claims for relief: (1) violations of the federal Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.*; (2) violations of the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 *et seq.*; and (3) violations of the Ohio Credit Services Organization Act, Ohio Revised Code § 4712.01 *et seq.*

Nationwide has moved to dismiss the Class Action Complaint for failure to state a claim upon which relief can be granted. Nationwide contends that Payton has failed to plead facts sufficient to meet the statutory requirements for her claims. Payton opposes the dismissal motion.

**II.     STANDARDS GOVERNING MOTIONS TO DISMISS**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenet is inapplicable to legal conclusions and legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Rule does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III.   ANALYSIS

#### A.   Violation of the Credit Repair Organizations Act

In her first claim, Payton alleges that Nationwide violated the Credit Repair Organizations Act ("CROA"). The CROA is a consumer protection statute designed to prevent fraud and abuses caused by credit repair organizations. In general terms, the credit repair business "involves the marketing of credit repair services to consumers whose consumer reports contain adverse information that interferes with their ability to obtain credit. . . . [T]hese businesses, through advertisements and oral representations, lead consumers to believe that adverse information in their consumer reports can be deleted or modified regardless of its accuracy." Consumer Reporting Reform Act of 1994, H.R. Rep. No. 103-486, 1994 WL

164513, at 151 (1994). Congress found that certain advertising and business practices of some credit repair organizations "worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit manners." 15 U.S.C. § 1679(a)(2).

The CROA prohibits credit repair organizations from making untrue or misleading statements and from committing fraud and deception, and it requires credit repair organizations to provide certain disclosures to consumers. 15 U.S.C. § 1679b (prohibited practices); 15 U.S.C. § 1697c (disclosures). Payton alleges that Nationwide violated § 1679b by making "untrue or misleading statements" and by "commit[ing] or attempt[ing] to commit fraud or deceive Plaintiff in connection with Defendant's offer of credit repair services for payment." (Doc. 1 at PageID 6.) She alleges specifically that Nationwide tried to "scare" her into believing that she owed debt so that she would require its debt settlement services. (*Id.*)

Nationwide moves to dismiss this claim on the basis that Payton has not pleaded sufficient facts to support the conclusory allegation that it is a credit repair organization subject to liability under the CROA. Under the CROA, a "credit repair organization":

> (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
>
> > (i) improving any consumer's credit record, credit history, or credit rating; or
> >
> > (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3)(A). The definition also provides for specific exclusions not applicable here. *See* 15 U.S.C. § 1679a(3)(B).

"Whether a company is a credit repair organization under the CROA depends on the representations made." *Plattner v. Edge Sols., Inc.*, 422 F. Supp. 2d 969, 974 (N.D. Ill. 2006);

5

*see also Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 546 (D. Md. 2005) (stating that a credit counseling agency may be covered by the CROA "[d]epending upon the allegations of the Complaint"). In the Complaint, Payton alleges that Nationwide made false and misleading statements to her about its debt settlement services. (Doc. 1 at PageID 2 ("Defendant mailed letters to Plaintiff to *settle debt* . . . ."), 3 ("The letter stated that . . . Plaintiff could have her *consumer debt significantly reduced*."), 8 ("Defendant made representations of fact about the *status of consumers' debt balances* . . . ."), 9–10 ("Defendant offered *debt settlement services* that Plaintiff, who had no debt to settle, was unable to receive substantial benefit from.").) Nationwide's solicitation letter attached as an exhibit to the Class Action Complaint does not contain representations that its debt settlement services could improve a person's credit record, credit history, or credit rating. (Doc. 1-1 at PageID 13.) Instead, the solicitation letter identifies different financial benefits of debt settlement including debt reduction, interest payment savings, and avoidance of bankruptcy. (*Id.*) The Court concludes that Payton has not pleaded facts sufficient to establish that Nationwide is a credit repair organization.

Nonetheless, Payton makes the alternative argument that liability can be imposed under the CROA against Nationwide even if it is not a "credit repair organization." Section 1679b generally prohibits any "person" from making untrue or misleading statements or engaging in deceptive or fraudulent practices in connection with credit repair services. 15 U.S.C. § 1679b.[1]

---

[1] The statute provides as follows:

> (a) In general
> No person may—
>
> (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer,

Payton cites to several cases in which district courts from the Northern District of Illinois broadly construed § 1679b to impose liability on a "person" who commits the prohibited practices even if that person is not a credit repair organization.  *See Costa v. Mauro Chevrolet*, 390 F. Supp. 2d. 720, 727 (N.D. Ill. 2005); *Parker v. 1-800 Bar None*, 2002 WL 215530, at *5 (N.D. Ill. 2002); *Bigalke v. Creditrust Corp*. 162 F. Supp. 2d 996, 999 (N.D. Ill. 2001).

However, this Court is not aware of any courts in the Sixth Circuit that have adopted this broad interpretation of § 1679b.  A district court from the Northern District of Ohio recently

---

employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to—

> (A) any consumer reporting agency (as defined in section 1681a(f) of this title); or
>
> (B) any person--
>     (i) who has extended credit to the consumer; or
>     (ii) to whom the consumer has applied or is applying for an extension of credit;

(2) make any statement, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete to--

> (A) any consumer reporting agency;
>
> (B) any person--
>     (i) who has extended credit to the consumer; or
>     (ii) to whom the consumer has applied or is applying for an extension of credit;

(3) make or use any untrue or misleading representation of the services of the credit repair organization; or

(4) engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

15 U.S.C.A. § 1679b.

began its analysis of this issue by noting that "[al]though the Sixth Circuit has not addressed this issue, other circuit courts of appeal have held a defendant must meet the CROA's definition of a credit repair organization before the defendant can be liable under the statute." *Hall v. Yark Automobile Group, Inc.*, No. 3:15-CV-00475, 2015 WL 4389692, at *2 (N.D. Ohio July 15, 2015) (citing *Zimmerman v. Puccio,* 613 F.3d 60, 71 (1st Cir. 2010) (defendant must perform the services of a credit repair organization); *Rannis v. Recchia,* 380 F. App'x 646, 650 (9th Cir. 2001) (Defendant was required to comply with the CROA because he met the statute's definition of a credit repair organization);[2] *F.T.C. v. Lalonde,* 545 F. App'x 825, 837 (11th Cir. 2013) ("The CROA prohibits unfair or deceptive advertising and business practices by credit repair organizations.")).

The *Hall* court also noted that the use of the term "person" in § 1679b must be read in context of the overall statutory scheme of the CROA:

> As its name implies, the CROA seeks to address misconduct by actors who target consumers looking to improve their commercial credit. The explicit purposes of the CROA are "(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b). It regulates the terms and conditions of contracts between credit repair organizations and consumers, and even mandates that consumers be given three business days to cancel a contract without penalty. 15 U.S.C. § 1679d. The CROA also requires credit repair organizations to make certain disclosures before executing a contract with a consumer. 15 U.S.C. § 1679c. *Thus, the context of 15 U.S.C. § 1679b(a) implies that subsection prohibits misconduct solely in the provision of credit repair services.*

*Id.* at *3 (emphasis added). The court then concluded that § 1679b imposes liability for engaging in prohibited conduct only upon a "person" who is "offering credit repair services." *Id.*

---

[2] The *Hall* court mistakenly refers to *Rannis v. Recchia* as *Bannis v. Becchia*. *Hall*, 2015 WL 4389692, at *2.

Similarly, courts in the Eastern District of Michigan have held that liability can be imposed for a prohibited act under the CROA only upon a credit repair organizations. *See*, *e.g.*, *Warner v. Fed. Home Loan Mortg. Corp.*, No. 12-15185, 2013 WL 1281932, at *6 (E.D. Mich. Mar. 26, 2013) ("To survive a motion to dismiss, Plaintiff must plead that Defendants fall within the ambit of the statute, which requires showing that Defendants are credit repair organizations."); *Rautu v. U.S. Bank, N.A.*, No. 2:12-CV-12961, 2013 WL 866480, at *6 (E.D. Mich. Mar. 7, 2013) (refusing to interpret "§ 1679b as applicable to persons not affiliated with credit repair organizations"), *aff'd sub nom.*, *Rautu v. U.S. Bank*, 557 F. App'x 411 (6th Cir. 2014); *Abo-Hassan v. Gold Star Mortg. Fin. Grp., Corp.*, No. 12-14421, 2013 WL 249603, at *4 (E.D. Mich. Jan. 23, 2013) ("First, the CROA applies to 'credit repair organizations.'"). This Court agrees with the well-reasoned decisions from the Northern District of Ohio and the Eastern District of Michigan. Liability cannot be imposed pursuant to § 1679b upon persons who are not affiliated with credit repair organizations or who do not provide credit repair services.

Accordingly, the Court will dismiss the CROA claim. Payton has not pleaded facts sufficient to establish either that Nationwide is a credit repair organization or that it provides credit repair services.

**B.  Violation of the Ohio Consumer Sales Practices Act**

In Count Two, Payton alleges that Nationwide violated several provisions of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code § 1345.02(B). Nationwide moves for dismissal arguing that Payton has failed to state a claim upon which relief can be granted. Payton did not oppose dismissal of this claim in her Memorandum Contra. (Doc. 11 at PageID 70.) The Court concludes that Payton has waived the OCSPA claim. *See*, *e.g.*, *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013) (stating that the

9

plaintiff's failure to respond in the district court to the defendant's attack on his standing amounted to waiver of those arguments); *Scott v. State of Tenn.*, No. 88-6095, 1989 WL 72470, at *2 (6th Cir. July 3, 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."); *Mullins v. Cyranek*, No. 1:12cv384, 2014 WL 3573565, at *5 (S.D. Ohio July 21, 2014) (finding that the plaintiff waived certain claims when she failed to oppose a motion to dismiss as to those claims).

**C.    Violation of the Ohio Credit Services Organization Act**

Payton alleges in the third claim that Nationwide violated the Ohio Credit Services Organization Act ("OCSOA") at Ohio Revised Code § 4712.07(D), (F), and (L). The OCSOA prohibits "credit services organizations" from engaging in an unconscionable, unfair, or deceptive act or practice, from advertising the services of a credit services organization without registering with the division of financial institutions, and from engaging in a fraudulent or deceptive act or practice. Ohio Rev. Code § 4712(D), (F), and (L). A credit services organization is defined as follows:

> any person that, in return for the payment of money or other valuable consideration readily convertible into money for the following services, sells, provides, or performs, or represents that the person can or will sell, provide, or perform, one or more of the following services:
>
> (a) Improving a buyer's credit record, history, or rating;
> (b) Obtaining an extension of credit by others for a buyer;
> (c) Providing advice or assistance to a buyer in connection with division (C)(1)(a) or (b) of this section;
> (d) Removing adverse credit information that is accurate and not obsolete from the buyer's credit record, history, or rating;
> (e) Altering the buyer's identification to prevent the display of the buyer's credit record, history, or rating.

10

Ohio Rev. Code § 4712.01(C)(1). Credit services organizations do not include, among other entities, certain non-profit "budget and debt counseling services." Ohio Rev. Code § 4712.01(C)(2)(f).

The parties' arguments regarding this state claim are similar to those made in regards to the federal CROA. Nationwide moves to dismiss the OCSOA claim on several grounds including that Payton has not pleaded sufficient facts to prove it is a credit services organization as defined in § 4712.01(C)(1). *See Snook v. Ford Motor Co.*, 142 Ohio App. 3d 212, 755 N.E.2d 380, 382 (2001) ("In order for a plaintiff to assert a successful claim against a defendant under the CSOA, . . . the defendant [must] qualify as a CSO [credit services organization]."). Payton argues in her Memorandum Contra that her pleadings are sufficient because she alleged that "Defendant made representations how debt settlement would benefit the Plaintiff and the Plaintiff's Credit Report." (Doc. 11 at PageID 70.) However, that statement from the brief simply is false. The Court has carefully read the Complaint and the attachments to the Complaint. Payton alleges only that Nationwide solicited her to obtain its debt settlement services. (Doc. 1 at PageID 2–3, 5, 8–10.) She does not make factual assertions that Nationwide represented to her that debt settlement would improve her credit record, credit history, or credit rating. As such, Payton has failed to plead that Nationwide could be liable for a violation of the OCSOA as a credit services organization.

Alternatively, Nationwide argues, and the Court agrees, that the OCSOA claim must be dismissed because Payton has not pleaded facts sufficient to establish that she suffered any injury or damages. Damages under the OCSOA are not presumed. *Thomas v. Jackson Hewitt, Inc.*, 192 Ohio App. 3d 732, 950 N.E.2d 578, 582 (2011). The state court in *Thomas* dismissed an OCSOA claim when the plaintiffs failed to sufficiently allege an injury or damages in their

complaint.  *Id.*  In this case, Payton alleges in a conclusory manner that she "suffered injury proximately caused by Defendant's misconduct."  (Doc. 1 at PageID 8, 11.)  However, she does not plead facts to support that conclusion.  She does not plead that she paid money to Nationwide for its services or otherwise took any detrimental actions in reliance upon Nationwide's representations.  In fact, she pleads that she knew Nationwide's statements that she owed debt were false.  (*Id.* at PageID 3, 8.)  Accordingly, the OCSOA claim fails on the alternative basis that Payton has failed to plead that she suffered injury or damages.

**IV.    CONCLUSION**

Plaintiff Leoris Payton has failed to state a claim upon which relief can be granted against Defendant Nationwide Debt Direct as to either the federal Credit Repair Organizations Act claim or the Ohio Credit Services Organizations Act claim.  Additionally, she has waived the Ohio Consumer Sales Practices Act claim.  She cannot bring claims on behalf of a putative class when her individual claims are not viable.  Accordingly, Defendant's Motion to Dismiss (Doc. 9) is hereby **GRANTED**.

IT IS SO ORDERED.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court